FILED

2006 Feb-09  AM 09:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| LARRY DEVAUGHN COLEMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:04-cv-00252-KOB-JEO |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| et al., | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION

Larry Devaughn Coleman, hereinafter referred to as the petitioner, filed his petition pursuant to 28 U.S.C. § 2241.  (Petition).[1]  He alleges that the respondents are unlawfully deducting restitution payments from his inmate account.  The court required the respondents to appear and show cause why the petitioner's requested relief should not be granted.  The respondents filed a response, asserting that the petitioner's request for relief be denied. (Response at p. 20).[2]

## FACTUAL BACKGROUND

The petitioner was convicted on or about June 2, 1998, in the United States District Court for the Northern District of Mississippi on his plea to one count of carjacking (18 U.S.C. § 2119) and one count of using/carrying a firearm during a crime of violence (18 U.S.C. § 924(c)).  He was sentenced to serve 145 months custody, followed by three years supervised release.  (Ex. 1, 2 & 3).[3]  Exhibit 2, Docket Sheet in U.S.A. v. Coleman; Exhibit 3, computer print-out, Public

---

[1]The petition is located at document 1.

[2]The response is located at document 8.

[3]The exhibits are located with the respondents' response to the order to show cause.

Information Inmate Data at 1).  The petitioner further was ordered to pay restitution of

$38,532.50 to the victim and an assessment fee of $200.00, which were due "in full

immediately."  (Ex. 1 at pp. 4-5).  The Standard Conditions of Supervision in the Judgment also

stated as follows:

> If this judgment imposes a fine or a restitution obligation, it shall
> be a condition of supervised release that the defendant pay any
> such fine or restitution that remains unpaid at the commencement
> of the term of supervised release in accordance with the Schedule
> of Payments set forth in the Criminal Monetary Penalties sheet of
> this judgment.

(Ex. 1 at p. 3).

The petitioner did not appeal the sentence or restitution order.  (Ex. 2).  As best this court

can discern, the petitioner did not challenge his conviction, sentence, or the restitution order in a

motion filed pursuant to 28 U.S.C. § 2255.

The petitioner was committed to the custody of the Bureau of Prisons (hereinafter

"BOP") on July 13, 1998.  He was designated to the Federal Correctional Institution in

Talladega, Alabama.  (Ex. 3 at p. 2).

## THE INMATE FINANCIAL RESPONSIBILITY PROGRAM

One of the relevant programs under the auspice of the BOP is the Inmate Financial

Responsibility Program ("the IFRP").  The program is intended to encourage inmates to meet

their financial obligations while incarcerated.  (Ex. 4 at p. 1).  Each inmate is assisted by a unit

team that reviews his financial obligations and develops a financial plan for the inmate.  (*Id*. at

4).  Relevant financial obligations include special assessments, court-ordered restitution, fines

and costs, state and local obligations (such as child support and alimony), and other federal

obligations (such as student loans, Veterans Administration claims, tax liabilities, and Freedom

of Information Act/Privacy Act fees).  (Ex. 4 at pp. 4-5).

    The BOP encourages each sentenced inmate to meet his legitimate financial obligations

through the IFRP.  (*Id*.).  The unit team initially assists the inmate in developing a financial plan

during the classification process.  (*Id*.).  Each inmate is informed of the purpose of the program

and of the consequences for refusing to participate in the program.  (*Id*.).  The respondents

describe the process as follows:

    The unit team staff reviews an inmate's Trust Fund Account and, after
subtracting $450.00 for the Inmate Telephone System and any amounts previously
paid as a part of IFRP for the previous six months, will divide the balance by six
and multiply the remainder by 25% (Exhibit 4, Program Statement 5380.07, at
6-7).  If the resulting balance is $25 or greater, the amount reflects the monthly
IFRP amount for the inmate (Exhibit 4, Program Statement 5380.07, at 6-7).  If
the resulting balance is less than $25.00, staff will multiply that balance by three
and the resulting balance will represent the quarterly IFRP amount for the inmate
(Exhibit 4, Program Statement 5380.07, at 6-7).  The inmate will sign a contract
agreeing to pay the monthly or quarterly payments from his trust fund account on
a monthly basis (Exhibit 4, Program Statement 5380.07, at 4).  Unit staff are to
contact the U.S. Probation Office for clarification when it is unclear if the court -
ordered obligation is to be paid while the inmate is in BOP custody or as a
condition of supervision (Exhibit 4, Program Statement 5380.07, at 6).
Participation and/or progress in the IFRP will be reviewed each time staff assess
an inmate's demonstrated level of responsible behavior (Exhibit 4, Program
Statement 5380.07, at 8).  During these reviews, the status of the payment plan
and the inmate's degree of participation is reflected on the Program Review
Report (Exhibit 4, Program Statement 5380.07, at 9).

    An inmate may refuse to participate in the IFRP; this is described as being
in "refuse" status.  Refusal by an inmate to participate in the IFRP or to comply
with the provisions of his financial plan leads to several consequences, including:
denial of furloughs other than for emergency or medical purposes; no performance
pay above the maintenance pay level, no bonus pay, no vacation pay; no
assignments to work details outside the secure perimeter of the facility; no
employment in UNICOR, or removal from UNICOR if already working there;
monthly commissary spending limitations; quarters in the lowest housing status;
no access to community-based programs; and, zero score on the "Responsibility"

3

section of the Custody Classification form (Exhibit 4, Program Statement
5380.07, at 9-11).

(Response at pp. 4-5).

As of August 27, 2002, the petitioner participated in the IFRP and was paying $30.00 a
quarter.  (Ex. 8).  On September 5, 2003, the petitioner missed a payment for the first time.  (Ex.
9 & 10 at p. 2; Ex. 11).  The petitioner was notified he would be placed in IFRP "Refuse" status
if he failed to make the next scheduled payment.  (Ex. 12).  The petitioner was also counseled
about his participation in the IFRP during his program review on October 28, 2003.  (Ex. 13).
The petitioner was advised he was being placed in "IFRP Refuse" status because of the two
missed payments.  (Ex. 14).  On January 6, 2004, the petitioner signed a new IFRP contract and
agreed to pay $30.00 a month.  (Ex. 15).

## DISCUSSION

The petitioner filed the present petition on February 6, 2004.  He contends that the BOP
has illegally scheduled payments of court ordered restitution through the IFRP and thereby is
violating his Fifth Amendment right to due process.  He seeks, among other things, to have the
BOP be enjoined "from further enforcement of the Coerced IFRP Participation."  (Petition at p.
10).

The respondents assert that the issues raised by the petitioner are not collaterally
reviewable in this action, the IFRP does not violate the petitioner's due process rights, and his
request for declaratory relief should be denied.  (Response).  In his traverse, the petitioner asserts
that the respondents misconstrue his issues because he "is not attacking the calculation of his
court ordered restitution" but is challenging the "manner in which his sentence is being

executed." (Traverse at pp. 2-3).[4]  He further states, "Petitioner asserts for Clarification [sic] that his contention is not against the BOP's authority to administer programs to collect court ordered fines, but against the BOP scheduling the payments ordered by the court." (*Id*. at p. 3).

At the time the petitioner was sentenced in 1998 in the United States District Court for the Northern District of Mississippi, Fifth Circuit law was clear that a trial court could not delegate the scheduling of restitution.  *See United States v. Albro*, 32 F.3d 173, 174 (5th Cir. 1994) (forbidding such delegation under the Victim and Witness Protection Act of 1982).  Thus, the petitioner could have challenged the court's order on direct appeal.  However, because he failed to challenge the restitution order at sentencing or on direct appeal, he is barred from attacking the validity of the restitution order itself in this collateral proceeding.  *Cani v. United States*, 331 F.3d 1210, 1213-14 & n.2 (11th Cir. 2003).  Accordingly, the only issue properly before the court is whether the BOP's application of the IFRP to the petitioner violates his constitutional rights.

Although frequently challenged, the "IFRP has been uniformly upheld against constitutional attack." *McGhee v. Clark*, 166 F.3d 884, 887 (7th Cir. 1999).  *See also Hudson v. True*, 1999 WL 128532 (D. Kan. 1999) ("General and constitutional challenges to the IFRP have been rejected by other courts as well."); *Richardson v. Hastings*, 2006 WL 149013 (E.D. Ky. January 19, 2006) ("other courts have rejected general and constitutional challenges to the IFRP.").  In *Johnpoll v. Thornburgh*, 898 F.2d 849, 851 (2d Cir.), *cert. denied*, 498 U.S. 819, 111 S. Ct. 63, 112 L. Ed. 2d 38 (1990), the Second Circuit Court of Appeals stated that "the IFRP program serves valid penological interests and is fully consistent with the BOP's authorization,

---

[4]The traverse is located at document 9.

under the direction of the Attorney General, to provide for rehabilitation and reformation."  To

the extent that the petitioner asserts that the BOP is improperly executing the sentence imposed

by the trial court, the undersigned disagrees.  The trial judge imposed an order of restitution and

made it payable immediately.  There was no improper delegation of the timing of the payments to

the BOP.  Any payment schedule imposed by the IFRP therefore "does not conflict with the

sentencing court's immediate payment order."  *McGhee*, 166 F.3d at 886.  In *Rogelio v. Wetzel*,

2005 WL 3110676 (N.D. Fla. 2005), the court, adopting the report and recommendation of the

magistrate judge, stated:

> . . . the question remains whether the creation of a financial responsibility
> plan through the IFRP which permits an inmate to make monthly or quarterly
> payments towards a fine impermissibly interferes with the court's judicial
> function of establishing the payment schedule itself.  In this Court's view, it does
> not.  Instead, the IFRP gives an inmate who owes a legitimate financial obligation
> an opportunity to fulfill all the terms of a judgment, terms which were set by the
> court in the payment schedule.  Imposing a monetary penalty and then turning the
> enforcement of that penalty over to the Bureau of Prisons is not impermissible.  It
> is generally recognized that when a court orders that the fine is due immediately,
> it does not require "immediate payment in full but 'payment to the extent that the
> defendant can make it in good faith, beginning immediately.'"  *McGhee*, 166 F.3d
> at 886 (citation omitted).  Assisting an inmate to meet his financial obligations
> and to become financially responsible are legitimate functions of a prison; to
> allow an inmate to disregard those obligations, as the instant Petitioner desires,
> would place the penitentiary in the position of ignoring its own court-ordered
> enforcement obligations with full knowledge that the inmate faces significant
> legal consequences if he does not take steps towards meeting those obligations.
> Such an approach would hardly fulfill the prison's obligations to protect, instruct,
> and discipline those charged to its care.

> Petitioner has pointed to nothing which even suggests that his participation
> in the IFRP is anything other than voluntary or that his participation in the IFRP
> subjects him to cruel and unusual punishment or to double jeopardy.  Though
> there are certainly incentives to participation, he has pointed to no "harsh
> sanctions" for an inmate's refusal to participate in the IFRP.  A non-participating
> inmate simply does not get choice job or housing assignments and cannot spend as
> much as he would like at the commissary or be given furlough.  There is nothing

unconstitutional or improper about using carefully selected and enticing incentives to encourage an inmate to pay what he legitimately owes.

The courts which have considered the fact pattern presented here are in agreement. *See Bramson v. Winn*, 136 Fed. Appx. 380 (1st Cir. 2005); *Matheny v. Morrison*, 307 F.3d 709 (8th Cir. 2002); *McGhee v. Clark*, 166 F.3d 884 (7th Cir. 1998); *Montano-Figueroa v. Crabtree*, 162 F.3d 548 (9th Cir. 1998), *cert. denied*, 526 U.S. 1091, 119 S. Ct. 1505, 143 L. Ed. 2d 657 (1999); *Pleasants v. Dewalt*, 2003 WL 23350442 (E.D.N.C. Feb.14, 2003); *Solis v. Menifee*, 2000 WL 1401633 (S.D.N.Y. Sept. 25, 2000); *Hudson v. True*, 1999 WL 1285832 (D. Kansas Dec. 23, 1999).

*Rogelio*, 2005 WL 3110676, at *4.

This court sees no justification for a departure from the reasoning in the foregoing authorities. The petitioner's participation in the program is voluntary. If he does not participate, he is not afforded the incentives otherwise available. The petitioner has no constitutional right to increased pay or the other enumerated benefits under the circumstances. *See Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995) (no interest in continuing UNICOR job); *Boglin v. Weaver*, 2001 WL 228172 (S.D. Ala. 2001) (Plaintiff did not suffer a deprivation of a constitutional interest when he was removed from his job); *Adams v. James*, 784 F.2d 1077, 1079 (11th Cir. 1986) (no interest in retaining position as prison law clerk); *accord, Sandin v. Conner*, 515 U.S. 472, 483, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)(noting with disapproval a lower court's finding of a liberty interest in a prison job). As noted by the respondents, "[b]eing in IFRP 'refuse' status, therefore, does not 'impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' <u>Sandin</u>, 515 U.S. at 484." Accordingly, the petitioner's allegations "fail to show a violation of federal or constitutional law." *United States v. Cline*, 2005 WL 2988290 (D. Kan. 2005) (citing *Hudson*, 1999 WL 1285832, at *1-3). *See also Richardson*, 2006 WL 149013, at *4 ("BOP Program Statement 5380.07, *Financial*

*Responsibility Program, Inmate* [IFRP], is not unconstitutional.").  The court finds that the

petitioner's § 2241 habeas corpus petition is due to be dismissed as it fails to state a claim upon

which relief can be granted.

## DECLARATORY RELIEF

To the extent the petitioner seeks to invoke this court's jurisdiction under 28 U.S.C. §

2201, the Declaratory Judgment Act, he is entitled to no relief.  As correctly noted by the

respondents, § 2201 is not self-actuating and provides no independent basis for jurisdiction.  It

provides that "in a case of actual controversy within its jurisdiction . . . any court of the United

States, upon the filing of an appropriate pleading, may declare the rights and other legal relations

of any interested party seeking such determination."  28 U.S.C. § 2201.  Under the Act, courts

have great discretion to decide whether to declare the rights of litigants.  The Act is an enabling

act which confers discretion on courts rather than a right on litigants.  *Wilton v. Seven Falls Co.*,

515 U.S. 277, 286, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995).  It does not provide a grant of

federal court jurisdiction.  *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S. Ct.

876, 94 L. Ed. 1194 (1950); *Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir. 1989)

(Declaratory Judgment Act does not, of itself, confer jurisdiction on federal courts).  It merely

creates a remedy in cases where federal jurisdiction exists on some independent basis.  *First*

*Federal Savings & Loan Assn. v. Brown*, 707 F.2d 1217, 1220 (11th Cir. 1983); *Junkler v. Fort*

*Lauderdale Housing Authority*, 764 F. Supp. 171, 175 (S.D. Fla. 1991) ("The Declaratory

Judgment Act can provide a procedural remedy for the declaration of the parties' rights and legal

restrictions if, and only if, the Court has jurisdiction from other sources.").  *See also*, *Federal Ins.*

*Co. v. Bill Harbert Const. Co.*, 82 F. Supp. 2d 1331, 1333 (S.D. Ala. 1999) ("to sustain a

8

declaratory judgment action in federal court, a plaintiff must invoke a basis for subject matter jurisdiction that is separate from the Declaratory Judgment Act.").

Under the present circumstances, the petitioner is entitled to no relief under this provision.  If there is a material change in the petitioner's economic circumstances that might affect his ability to pay restitution, he may notify the court pursuant to 18 U.S.C. § 3664(k).

## CONCLUSION

Premised on the foregoing, the court concludes that the petitioner has not stated grounds entitling him to any relief.

**DONE**, this 9th day of February, 2006.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE